[Cite as *Mid-Century Ins. Co. v. Stites*, 2021-Ohio-3839.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


MID-CENTURY INSURANCE COMPANY, AS SUBROGEE OF GENERAL WESTERN HIGHLAND COMPANY,

    Plaintiff-Appellant,

  vs.

NICHOLAS STITES,

    Defendant-Appellee.

:      APPEAL NO. C-200421
       TRIAL NO. A-1704151

:

:      *O P I N I O N.*

:

:

:

:


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  October 29, 2021


*Metz, Gilmore, & Vaclavek, LLC*, *Carl E. Metz II*, *Wolnitzek & Rowekamp PLLC* and *Leonard G. Rowekamp*, for Plaintiff-Appellant,

*Patsfall, Yeager, & Pflum* and *Stephen M. Yeager*, for Defendant-Appellee.

**ZAYAS, Presiding Judge.**

{¶1}    This case arises from a fire that occurred at an apartment complex on August 22, 2015.  Plaintiff-appellant, Mid-Century Insurance Company, as subrogee of General Western Highland Company ("MCI"), brings this appeal to challenge the trial court's grant of summary judgment in favor of defendant-appellee Nicholas Stites.  For the following reasons, we affirm the judgment of the trial court.

## Procedural History

{¶2}    On August 7, 2017, MCI brought suit against Stites for negligence.  Stites subsequently moved for summary judgment on the claim, attaching his own affidavit to the motion.  The trial court granted summary judgment in favor of Stites on October 19, 2018, after MCI failed to file a response.  On November 28, 2018, MCI filed a motion to vacate the court's judgment and requested to file a response in opposition to summary judgment instanter.  The trial court granted the motion and allowed leave for MCI to file its response.  The response included a deposition of Stites and a "Hamilton County Fire Investigation Unit Incident Report."  Stites then filed a reply in support of his motion for summary judgment, which included an affidavit of Steven Buchner and a "Woodlawn Police Division Criminal Investigations Section Investigative Summary."

{¶3}    On November 10, 2020, the trial court granted summary judgment in favor of Stites.  In relevant part, the trial court's entry stated:

> This matter is before the court on Defendant, Nicholas Stites'
> Motion for Summary Judgment.  The Court, having reviewed
> Defendant's Motion and the memoranda in support and in opposition,
> finds the Motion for Summary Judgment is well taken and hereby
> GRANTS the same.  For the reasons stated in Defendant's Motion and

supporting memoranda, the Court finds that there are no genuine issues of material fact. Plaintiff's Complaint is hereby DISMISSED WITH PREJUDICE.

### Factual Background

*Affidavit of Nicholas Stites*

{¶4} Stites was an invited guest of the tenant of the apartment unit where the fire is alleged to have started on August 22, 2015. He was drinking a beer and smoking a cigarette, along with three others, on the balcony of the apartment. He extinguished and disposed of his cigarette butt in his empty beer bottle. The three others extinguished and disposed of their cigarette butts in the hollow leg of an overturned, plastic chair. When he left to return to his own residence, there was no fire on the apartment's balcony or anywhere else. He did not learn of the fire until several hours later.

*Deposition of Nicholas Stites*

{¶5} On the day of the fire, Stites met up with four friends around noon at the Century Inn Bar and Grill. They had lunch, drank one or two beers, smoked cigarettes, and played cornhole. They disposed of the cigarettes in the available ashtrays. At the time of his deposition, he did not remember what they had for lunch, what kind of beer they drank, exactly how many beers they drank, whether he paid with cash or with a credit card, or how long they were there.

{¶6} He left the bar with two of his friends, Spence and Buchner, because Spence had an obligation to pick something up at a store and Spence was the one who drove Stites to the bar. The other two friends, Hoctor and Shidler, rode separately. Before going to the store, they all met at Hoctor's apartment because Hoctor needed to change clothes and do a load of laundry. Hoctor's apartment was

only a one-to-two-minute drive from the bar. At the apartment, they watched a tennis tournament while going back and forth between inside the apartment and out on the balcony. Stites had one beer while he was there. He did not remember what kind of beer it was or where he got it from but did remember it was in a bottle. They all agreed to move to Stites's house to play cards since they had to leave to go to the store and Stites's house was about five minutes from the store and closer to where most of them lived.

{¶7} The balcony was approximately five feet by ten feet in size. It could comfortably fit around four people at one time. There was a stack of plastic chairs and a small table on the balcony. The balcony also had leaves piled in the corners and a couple of old pizza boxes were out there. Hoctor had a rule that they had to smoke outside. Stites smoked one cigarette while he was there. Hoctor, Buchner, and Shidler also smoked that day. Spence did not smoke cigarettes. Stites could not recall how many cigarettes the others smoked that day. He also could not recall if there was an ashtray on the balcony. He did remember seeing a small pile of cigarette butts—probably 15 to 25—on the plastic chairs. Once Stites finished drinking his beer, he instantly put his cigarette butt in the bottle and left the bottle sitting on the table on the balcony. None of the friends ever discussed how to dispose of their cigarettes while at Hoctor's apartment. Prior to the day of the fire, if Hoctor did not have an ashtray for them to put the cigarettes in, they had to pile the cigarettes on the chair.

{¶8} Stites left the apartment with Buchner and Spence to go to the store. The others were waiting at Stites's house when they got back from the store. They "hung out" at Stites's house until around midnight. Stites did not learn of the fire until the next morning. He was ultimately contacted by an investigator shortly

thereafter. Stites read in the report provided by the investigators that the fire was started by a cigarette butt.

*Affidavit of Steven Buchner*

{¶9} Steven Buchner was an invited guest of the tenant of the apartment unit where the fire is alleged to have started on August 22, 2015. He was present with Stites, along with two others, on the balcony of the apartment. He recalls seeing Stites dispose of his cigarette butt into a beer bottle. He left the apartment to go to Stites's residence for the rest of the evening. When he left the apartment, there was no fire on the apartment's balcony or anywhere else. He did not learn of the fire until several house later.

**Law and Analysis**

*Standard of Review*

{¶10} MCI raises a sole assignment of error, arguing that the trial court erred in granting summary judgment by failing to view the facts in a light most favorable to MCI. We review the grant of summary judgment de novo. *Heiert v. Crossroads Community Church, Inc.*, 1st Dist. Hamilton Nos. C-200244 and C-200391, 2021-Ohio-1649, ¶ 37, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion and that conclusion is adverse to the nonmoving party." *Id.*, citing *Evans v. Thrasher*, 1st Dist. Hamilton No. C-120783, 2013-Ohio-4776, ¶ 25. "The initial burden in on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case." *Id.* at ¶ 38, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264

(1996). "If the moving party meets its initial burden, the burden shifts to the nonmoving party to set forth specific facts to show there is a genuine issue of material fact." *Id.*

### *Improper Evidence*

{¶11} Two pieces of evidence submitted by the parties cannot properly be considered under Civ.R. 56. In relevant part, Civ.R. 56(C) provides:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *No evidence or stipulation may be considered except as stated in this rule.*

(Emphasis added.) "Other types of documents may be introduced as evidentiary material only through incorporation by reference in a properly framed affidavit. Documents that have not been sworn, certified, or authenticated by way of an affidavit 'have no evidentiary value.' " *Firor v. Lydon*, 1st Dist. Hamilton No. C-170137, 2018-Ohio-1662, ¶ 49, quoting *Mitchell v. Internatl. Flavors & Fragrances, Inc.*, 179 Ohio App.3d 365, 2008-Ohio-3697, 902 N.E.2d 37, ¶ 17 (1st Dist.).

{¶12} The "Hamilton County Fire Investigation Unit Incident Report" and the "Woodlawn Police Division Criminal Investigations Section Investigative Summary" were entered into evidence without properly being sworn to, certified, or incorporated into an attached affidavit as required to be considered under Civ.R. 56(C). *See Hersh v. Grumer*, 8th Dist. Cuyahoga No. 109430, 2021-Ohio-2582, ¶ 12 ("The police reports, standing alone, are not proper Civ.R. 56 evidence."). Thus,

neither document has any evidentiary value for purposes of summary judgment. *See Firor* at ¶ 49.

**{¶13}** We acknowledge that there is no indication in the record that either party raised any objection to either document. When no objection is raised, a trial court may consider evidence not in accord with Civ.R. 56. *E.g.*, *Loukinas v. Roto-Rooter Servs. Co.*, 167 Ohio App.3d 559, 2006-Ohio-3172, 855 N.E.2d 1272, ¶ 22 (1st Dist.); *Greene v. Partridge*, 2016-Ohio-8475, 78 N.E. 3d, ¶ 23 (4th Dist.); *Nationstar Mtge. LLC v. Payne*, 2017-Ohio-513, 85 N.E.3d 249, ¶ 21 (10th Dist.). However, the issue here is that the trial court's entry is silent on whether it considered these documents when determining summary judgment.

**{¶14}** When there is no indication that a trial court relied on the improper evidence, a reviewing court will presume the trial court considered only the proper evidence when ruling on a summary-judgment motion. *E.g.*, *Marrie v. Internatl. Local 717*, 11th Dist. Trumbull No. 2001-T-0046, 2002-Ohio-3148, ¶ 22, quoting *Drawl v. Cornicelli*, 124 Ohio App.3d 562, 706 N.E.2d 849 (11th Dist.1997), fn. 5 (" 'Even though a trial court may consider evidence not authorized by Civ.R. 56(C) where there is no objection made, reviewing courts will *presume* that *the court considered only evidence properly submitted* unless it appears from the record that the court, in fact, relied upon improper materials.' " (Emphasis sic.)); *Stoll v. Gardner*, 182 Ohio App.3d 214, 2009-Ohio-1865, 912 N.E.2d 165, ¶ 24 (9th Dist.), citing *Wayne Sav. Community Bank v. Gardner*, 9th Dist. Wayne No. 08CA0016, 2008-Ohio-5926, ¶ 17 ("We will not presume that the trial court considered such improper evidence, however, unless the trial court specifically indicated that it did so when entering judgment in the case."). Therefore, we presume that the trial court considered only the proper evidence in this case and do the same here in our de novo

7

review. *See Anderson v. Maines Paper and Food Serv. Inc.*, 8th Dist. Cuyahoga No. 89187, 2007-Ohio-6073, ¶ 14.

*Negligence*

**{¶15}** "To establish actionable negligence, one must show (1) existence of a duty, (2) breach of that duty, and (3) an injury resulting proximately therefrom." *Heiert*, 1st Dist. Hamilton Nos. C-200244 and C-200391, 2021-Ohio-1649, at ¶ 40, citing *Ellis v. Time Warner Cable, Inc.*, 1st Dist. Hamilton No. C-120083, 2013-Ohio-240, ¶ 6. Where the damages are alleged to have been caused by a single tortfeasor, and the injury complained of may have resulted from any one of several causes, " 'it is incumbent upon plaintiff to produce evidence which will exclude the effectiveness of those causes for which defendant is not legally responsible.' " *Beaty v. Schilling*, 1st Dist. Hamilton Nos. C-880807 and C-890061, 1990 WL 14764, *2 (Feb. 21, 1990), quoting *Gedra v. Dallmer Co.*, 153 Ohio St. 258, 91 N.E.2d 256 (1950), paragraph two of the syllabus.

> [T]he law is that there can be no guessing by either court or jury. There must be some evidence, direct or inferential, that the agency which produces an injury is the result of the negligence of a defendant before he can be held liable therefore, and if the cause of an injury to a plaintiff may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, the plaintiff has not sustained the burden of proving that the injury is the direct result of the defendant's negligence.

*Gedra* at 265.[1]

> The supreme court [sic] observed that the rule in *Gedra* * * * does not impose a burden on the plaintiff 'of always effectively eliminating all other possible causes' analogous to proof beyond a reasonable doubt in a criminal case. Instead, under this rule the plaintiff fails to prove causation if from the same facts used by the plaintiff to infer proximate cause, it is equally reasonable to draw inferences of other possible causes.

*Wesley v. McAlphin Co.*, 1st Dist. Hamilton No. C-930286, 1994 WL 201825, *3 (May 25, 1994), quoting *Westinghouse Elec. Corp. v. Dolly Madison Leasing & Furniture Corp.*, 42 Ohio St.2d 122, 127, 326 N.E.2d 651 (1975).

{¶16} If the plaintiff fails to eliminate equally valid theoretical causes for the actionable injury, "the plaintiff would be asking the fact finder merely to speculate in his or her favor, a latitude the law does not grant." *Lonaker v. Cincinnati Youth Sports*, 1st Dist. Hamilton No. C-030672, 2004-Ohio-5993, ¶ 13, quoting *Loura v. Adler*, 105 Ohio App.3d 634, 638, 664 N.E.2d 1002 (1st Dist.1995). "In short, negligence is never presumed, and the plaintiff must show how and why the injury occurred." *Id.* at ¶ 14, citing *Wesley*.

{¶17} Here, the evidence established that improper disposal of a cigarette was the suspected cause of the fire. Four individuals were smoking on the balcony that day, including Stites. Stites claimed that he smoked one cigarette and then placed the cigarette butt in an empty beer bottle when he was done. The others

---

[1] While the Ohio Supreme Court has adopted the theory of alternative liability in *Munnich v. Ashland Oil Co.*, 15 Ohio St.3d 396, 397, 473 N.E.2d 1199 (1984), it retained *Gedra* for cases which " 'involve a single plaintiff and a single defendant, with allegedly multiple proximate causes for the plaintiff's injuries.' " *Beaty*, 1st Dist. Hamilton Nos. C-880807 and C-890061, 1990 WL 14764, at fn. 1.

placed their cigarette butts in the hollow leg of an overturned plastic chair. MCI argues that whether Stites actually placed his cigarette in the beer bottle was a genuine issue of material fact that warranted denial of summary judgment. However, even if this testimony was ultimately disbelieved, the evidence would still be insufficient to prove proximate causation. It would be equally possible, based on the evidence presented, to infer that any one of the four people smoking on the balcony that day could have caused the fire due to improper disposal of their cigarette and MCI failed to put forth evidence to eliminate any of the other individuals present as the potential proximate cause of the fire.

{¶18} MCI cites to *Westinghouse*, 42 Ohio St.2d 122, 326 N.E.2d 651, and *Morelli v. Walker*, 8th Dist. Cuyahoga No. 88706, 2007-Ohio-4832, and asserts that merely establishing that Stites was smoking in the area of the fire was sufficient. However, neither case provides support for MCI's argument.

{¶19} In *Westinghouse*, the suspected cause of a warehouse fire was careless smoking by a warehouse tenant's employee. *Westinghouse* at 123. The fire spread to an adjoining part of the warehouse, occupied by another tenant, which was the plaintiff in the action. *Id.* at 122. Evidence was presented that: (1) the defendant's employee was in the vicinity of the closet which was the point of origin of the fire, (2) the defendant's employee was smoking, (3) the defendant's employee would probably have had to dispose of a cigarette butt while near the closet, (4) there were flammable materials in the closet and paper which could be set on fire by a dropped cigarette, and (5) the interval of time before the discovery of the fire was compatible with a fire cause by a dropped cigarette. *Id.* at 128. "Defendants suggested other causes of the fire were possible, such as spontaneous combustion, arson, or sparks from a locomotive." *Id.* The court found "all of these possible causes were questions

of fact for the jury and none acted to prevent the drawing of an inference of defendant's liability, as they would for example, if they established that some other cause was the only one possible." *Id.* at 128-129. Importantly, the court went on to say:

> None of the defendant's theories of the cause of the fire amount to more than the suggestion that other causes were possible, and none amounted to proof that the evidence presented by plaintiffs did not permit an inference that careless smoking by defendant's employee caused the fire. Suggestion of other causes is limited only by the limits of the human imagination, and are not the basis for taking a case from the jury.
>
> The distinction between those possible causes which, as a matter of law, render the drawing of an inference of negligence impermissible and those which involve weighing the evidence by the jury, can be best illustrated by an example.
>
> In the instant case, plaintiffs could prove all the facts they allege and still not make out a case, if it were also proved that other persons were smoking near the closet, who were not employees of defendant, and that it was reasonable to infer that one of their cigarettes caused the fire. In that hypothetical case, plaintiff's evidence, no matter how convincing, would not warrant an inference that defendant's negligence was responsible for the fire, for it would be a matter of speculation as to who had tossed the guilty cigarette butt. Because an inference of defendant's negligence would be impermissible on those facts, plaintiffs would have the burden of

11

eliminating the carelessness of the other smokers in order to make out a case for the jury.

*Id.* at 129.

{¶20} The case at hand parallels the hypothetical situation laid out by the Ohio Supreme Court in *Westinghouse* to represent a situation in which an inference would be impermissible. The evidence shows that four people were present and smoking on the balcony that day and MCI did not meet its burden to eliminate the carelessness of the other smokers as a proximate cause of the fire. Thus, it would be impermissible in this case to infer that Stites's negligence caused the fire because it would be based on speculation as to who tossed the guilty cigarette butt.

{¶21} *Morelli*, 8th Dist. Cuyahoga No. 88706, 2007-Ohio-4832, also does not provide support for MCI's argument. *Morelli* concerned a house fire that occurred in the early morning hours after Morelli hosted a surprise party. *Morelli* at ¶ 2-3. The defendant, a guest at the party, asked Morelli if she could smoke, and Morelli allowed the defendant to smoke in the garage because of the extremely cold temperatures. *Id.* at ¶ 3. The defendant smoked two cigarettes throughout the party. *Id.* At some point in the night when Morelli was sleeping, the smoke alarms went off and she was met with a wall of fire in the garage. *Id.* at ¶ 5. Firefighters arrived and determined the point of origin was the northeast corner of the garage. *Id.* at ¶ 6. Within that area of the garage were two electrical outlets, a refrigerator, and a wooden cart with two containers of peat moss and dahlia bulbs in them. *Id.* The defendant claimed to have extinguished the tips of her cigarettes inside a glass and then placed the butts back in her pack. *Id.* at ¶ 7. Investigators identified four possible origins of the fire: each of the two outlets, the refrigerator, and the negligent disposal of smoking materials near the container of peat moss. *Id.* at ¶ 8.

**{¶22}** Morelli sued the defendant and, during trial, both sides presented expert testimony on the cause of the fire. *Id.* at ¶ 9, 11. A jury verdict was returned against the defendant and defendant appealed, arguing that the trial court erred in denying her motion for a directed verdict because Morelli's expert testimony could not establish proximate causation. *Id.* Morelli's expert opined that the cause of the fire was the defendant's negligent disposal of smoking materials. *Id.* at ¶ 18. By using deductive reasoning, the expert "sought to eliminate as many of the possible causes as he could." *Id.* The expert had a forensic electrical engineer testify in support of his conclusion. *Id.* at ¶ 19. Recognizing that three of the possible causes were potential electrical malfunctions, the engineer eliminated those three potential causes in his testimony. *Id.* Thus, Morelli's expert testimony eliminated all but the negligent disposal of a cigarette as the possible cause. *Id.* Alternatively, defendant's expert opined that the "cause of the fire related to the normally operating refrigerator that ignited nearby combustibles." *Id.* at ¶ 20. Ultimately, the court found that the trial court did not err in allowing the case to proceed to a jury as "reasonable minds could reach different conclusions when considering all of the evidence." *Id.*

**{¶23}** Thus, *Morelli* is distinguishable from the case at hand because (1) only one person was smoking in the area at the time of the fire and (2) expert testimony eliminated all other possible causes of the fire. Therefore, it would have been permissible in *Morelli* for the jury to infer the defendant's negligence because this conclusion would not be based on speculation or conjecture. In the case at hand, no evidence was presented to eliminate the other potential causes of the fire, for which Stites would not have been legally responsible, so any inference that he was negligent would be impermissible as it would be based purely on speculation or conjecture. Therefore, the trial court properly granted summary judgment in favor of Stites.

13

*Joint Tortfeasor*

**{¶24}** MCI additionally argues that summary judgment should have been denied because Stites was a joint tortfeasor in a joint enterprise. "[I]n order for an individual to be engaged in a joint enterprise within the meaning of the law of negligence, there must be a community of interests in the purpose of the enterprise, and the individual must have some voice and right to be heard in its control or management." *Zachariah v. Roby*, 178 Ohio App.3d 471, 2008-Ohio-4832, 898 N.E.2d 998, ¶ 18 (10th Dist.). " 'Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interests in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto.' " *Bloom v. Leach*, 120 Ohio St. 239, 166 N.E. 137 (1929), quoting *St. Louis & S.F.R. Co. v. Bell*, 58 Okla. 84, 159 P. 336 (1916). " 'Each must have some voice and right to be heard in its control or management.' " *Id.*

**{¶25}** MCI appears to argue that Stites was part of a common purpose to dispose of the cigarettes in a plastic chair among flammable debris and thus all involved are equally culpable. However, there is nothing in the record to show the existence of any common enterprise, of the sort that each had the right to direct and control each other's movement, between the people smoking on the balcony that day. There is no indication of any control as to how each of them disposed of their cigarettes or any indication that any of them had any right to direct or govern the movement or conduct of each other in this regard. On the contrary, Stites testified that they never discussed how to dispose of the cigarettes. Thus, it cannot be said that the parties smoking on the balcony that day were engaged in a joint enterprise.

14

Therefore, the trial court did not err in granting summary judgment in favor of Stites. MCI's sole assignment of error is overruled.

### Conclusion

{¶26}   Having overruled the sole assignment of error, we affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.