DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Keith Thornton, appeals the judgment of the Summit County Court of Common Pleas, which directed a verdict adverse to him on his complaint against appellees, Summit County Children Services Board and Jillian Powlowski. This Court affirms.
 I. {¶ 2} Appellant is the Inspector, and third in command, of the Summit County Sheriff's Office. He participated as mentor in the Summit County Adolescent Mentoring Program ("SCAMP"), which lost its funding and no longer *Page 2 
exists. Appellant began mentoring J. Michael Bell when he was thirteen. After SCAMP was terminated, appellant continued to act as an unofficial mentor to J. Michael and maintained a close and supportive relationship with the minor.
 {¶ 3} When J. Michael was sixteen, he was injured in a car accident and transported to Akron General Medical Center. The hospital attempted to obtain consent to treat J. Michael, but the minor did not know how to contact either his mother or father. He was also unable to contact his uncle, with whom he was then residing. Therefore, J. Michael called appellant, who came to the hospital. Hospital employees attempted to determine the relationship between J. Michael and appellant, in an effort to find someone who had the authority to consent to treatment for the minor. A hospital employee made a dependency referral to appellee Summit County Children Services Board ("CSB") regarding J. Michael's inability to locate either parent or the uncle with whom he was residing. The referral also requested the agency to investigate the nature of the relationship between J. Michael and appellant, because the hospital employees were unclear as to the nature of the relationship.
 {¶ 4} Appellee Jillian Powlowski is an intake caseworker at CSB. She investigated the referral by the hospital. She questioned J. Michael, appellant, J. Michael's uncle and his guidance counselor regarding the relationship. Appellant alleged that he suffered damage when Ms. Powlowski accused appellant of being gay and of having an inappropriate sexual relationship with J. Michael. *Page 3 
 {¶ 5} Appellant filed a complaint against appellees, alleging four state claims, specifically, defamation, libel per quod, intentional infliction of emotional distress and invasion of privacy; and one federal claim pursuant to 42 U.S.C. 1983. Appellees answered the complaint. Appellees moved for summary judgment, and appellant responded in opposition. The trial court denied appellees' motion for summary judgment and the matter proceeded to trial before a jury.
 {¶ 6} During trial, at the conclusion of appellant's case-in-chief, appellees moved for a directed verdict on all counts. Appellees filed several memoranda in support of their motion for directed verdict. Appellant did not file a brief in opposition but did orally argue before the court in opposition. The trial court granted appellees' motion for directed verdict on all claims. Appellant timely appeals, raising two assignments of error for review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN DIRECTING A VERDICT AGAINST THE PLAINTIFF ON HIS STATE-LAW CLAIMS AGAINST DEFENDANT JILLIAN POWLOWSKI."
 {¶ 7} Appellant argues that the trial court erred by directing a verdict against him on his state law claims against appellee Jillian Powlowski.[1] Specifically, appellant sets forth four theories as to why the trial court erred, to *Page 4 
wit: (1) that the evidence presented a question for the jury on the issue of Ms. Powlowski's qualified immunity pursuant to R.C.2744.03(A)(6); (2) that there was evidence from which a jury could reasonably conclude that there was publication of the defamatory charges; (3) that there was evidence from which a jury could reasonably conclude that Ms. Powlowski's words and conduct were not privileged; and (4) that there was evidence from which a jury could reasonably conclude that Ms. Powlowski's words and conduct caused injury to appellant. Because it is dispositive of this assignment of error, this Court addresses the issue of Ms. Powlowski's statutory immunity. Because we find that the evidence supports a finding that Ms. Powlowski is immune from liability, appellant's first assignment of error is not well taken.
 {¶ 8} Civ.R. 50(A) permits a party to move for a directed verdict at the close of the opponent's evidence. This Court has stated:
 "In ruling on a directed verdict-or, in our case, considering such a ruling on appeal-a court must construe the evidence most strongly in favor of the non-moving party and determine whether reasonable minds can come to but one conclusion on the evidence submitted, that conclusion being adverse to the non-moving party. If reasonable minds can reach different conclusions, the matter must be submitted to a jury. The court considers the motion without weighing the evidence or determining the credibility of witnesses. A motion for a directed verdict raises a question of law because it examines the materiality of the evidence rather than the conclusions to be drawn from the evidence. Thus, the court does not determine whether one version of the facts presented is more persuasive than another; rather, it determines whether only one result can be reached under the theories of law presented in the complaint." Clair v. First Am. Title Ins., 9th Dist. No. 23382, 2007-Ohio-1681, at ¶ 5, quoting Cox v. Oliver Machinery Co. (1987), 41 Ohio App.3d 28, 29. *Page 5 
Accordingly, this Court reviews the trial court's decision to grant or deny a motion for directed verdict de novo. Clair at ¶ 5, citingNichols v. Hanzel (1996), 110 Ohio App.3d 591, 599.
 {¶ 9} Ms. Powlowski was a caseworker employed by CSB at the time of the incident. CSB is a political subdivision pursuant to R.C.2744.01(F). See Grimm v. Summit Cty. Children Servs. Bd, 9th Dist. No. 22702, 2006-Ohio-2411, at ¶ 62. R.C. 2744.03(A)(6) sets forth the circumstances under which an employee of a political subdivision is immune from civil liability for damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function. Pursuant to R.C.2744.01(C)(1) and (2)(o), the operation of children's agencies constitutes a governmental function. As an employee of CSB, Ms. Powlowski would be immune from liability, unless one of the statutory exceptions to immunity applies.
 {¶ 10} R.C. 2744.03(A)(6) states:
 "In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 "(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to *Page 6 
exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term `shall' in a provision pertaining to an employee."
There is no allegation that liability has been expressly imposed upon Ms. Powlowski by any section of the Revised Code. Further, appellant has asserted that Ms. Powlowski caused him harm as a result of her actions within the course of her employment during her investigation of a referral from Akron General Hospital to CSB regarding J. Michael. Appellant argues that Ms. Powlowski's action, specifically her investigation into a possible sexual relationship between him and J. Michael, was outside the scope of the referral to CSB. However, appellant does not dispute that CSB and its caseworkers have a duty to investigate referrals to the agency. Therefore, Ms. Powlowski's act of investigating the referral alleging dependency and questioning the nature of the relationship between appellant and J. Michael was not manifestly outside the course and scope of her employment or official responsibilities. Appellant challenges merely the manner in which she investigated the referral. Accordingly, Ms. Powlowski would be immune from prosecution unless her investigation was done with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 11} In regard to the exceptions to statutory immunity, this Court has stated: *Page 7 
 "`Malice' is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. * * * `Bad faith' involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. * * * [W]anton misconduct is the failure to exercise any care whatsoever. * * * [M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor. Such perversity must be under such conditions that the actor must be conscious that his conduct will, in all likelihood, result in an injury." (Internal citations omitted.) Starkey v. Hartzler (Mar. 26, 1997), 9th Dist. No. 96CA0048.
 {¶ 12} This Court has further stated that "`reckless' conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of * * * harm and that this risk is greater than that necessary to make the conduct negligent." Shalkauser v. Medina, 148 Ohio App.3d 41,2002-Ohio-222, at ¶ 37, citing Thompson v. McNeill (1990),53 Ohio St.3d 102, 104-105, citing 2 Restatement of the Law 2d, Torts (1965) 587, Section 500.
 {¶ 13} In this case, Ms. Powlowski testified that she was assigned on April 29, 2005, to investigate a referral from Akron General Hospital regarding J. Michael. Specifically, the referral raised concerns regarding J. Michael's dependency, because neither parent nor the uncle with whom the minor was living was accessible or available to consent to the minor's medical treatment after he was involved in a car accident. In addition, Ms. Powlowski testified that the referral raised concerns about the "legitimacy of the relationship" between *Page 8 
appellant and J. Michael. Ms. Powlowski testified that she spoke with J. Michael, appellant, Lawrence Bell and his fiancée Tracy Austin, and J. Michael's guidance counselor during the course of her investigation. Ms. Powlowski denied that her investigation had any component of sexual abuse. In addition, she testified that Officer Farr of the Akron Police Department called her regarding a report that the minor's uncle Lawrence Bell made about a possible situation regarding the minor and appellant. Ms. Powlowski testified that she informed Officer Farr that the referral which raised concerns regarding the relationship between appellant and the minor was closed as unsubstantiated. Ms. Powlowski testified that the case was concluded on June 10, 2005.
 {¶ 14} J. Michael Bell testified that he spoke very briefly with Ms. Powlowski once regarding the referral. He testified that she questioned him at school regarding whether he knew appellant and whether he and appellant had had a sexual relationship. J. Michael also testified that Ms. Powlowski asked him how long appellant had been gay. He testified that he told appellant that Ms. Powlowski had come to the school and asked him questions.
 {¶ 15} Lawrence Bell, the minor's uncle, testified that Ms. Powlowski left a notice at his home and left a voicemail message, requesting that he contact her. He testified that he called her back and that "it was about a case of possible molestation." Mr. Bell testified that Ms. Powlowski told him that she was investigating an improper relationship and that she had questioned J. Michael. Mr. *Page 9 
Bell admitted that Ms. Powlowski told him that she had to do a thorough assessment of the facts for her investigation. Mr. Bell testified that, based on the allegations in the referral, he filed a police report with the Akron Police Department.
 {¶ 16} Tracy Austin Bell, who was engaged to Mr. Bell at the time of the investigation, testified that she was present when Mr. Bell was speaking to Ms. Powlowski on the phone about the referral. She testified that she took the phone and spoke with the caseworker after Mr. Bell began to get upset. Ms. Bell testified that Ms. Powlowski told her that someone at the hospital made a report to CSB based on observations of appellant and J. Michael after the car accident.
 {¶ 17} Officer Jay Farr of the Akron Police Department testified that Lawrence Bell filed a report with the police department regarding a referral made regarding J. Michael. He testified that he called Ms. Powlowski, who told him that she had spoken with the alleged victim and the suspect (appellant), and that the referral was unfounded. Officer Farr testified that Ms. Powlowski told him that the person who made the referral to the agency was concerned about the relationship between appellant and the minor. He testified that the person who made the referral to CSB, and not Ms. Powlowski herself, may have raised concerns that appellant and the minor had an "unhealthy relationship."
 {¶ 18} Chris Rhoades of the Summit County Sheriffs Department testified that he knows appellant and he heard a rumor that someone had filed a report *Page 10 
alleging that appellant was "messing around with some kid" but that it had been investigated and there was nothing to it. He clarified that no one from CSB told him about the report or allegations.
 {¶ 19} Judge Greg Macko of the Barberton Municipal Court also testified that he heard the same rumor and that he heard it from a retired drug unit officer, not from anyone from CSB.
 {¶ 20} Appellant testified that Ms. Powlowski called him and told him that she was investigating allegations that she had received from Akron General Hospital. He testified that she told him that the allegations came as a result of inconsistencies in his statements to hospital personnel and involved the accusation that he had an improper, inappropriate relationship with J. Michael. Appellant testified that he understands that CSB has to investigate every referral without reference to whether it is founded or unfounded. He further testified that he does not fault the referring person at the hospital for questioning the nature of the relationship between him and J. Michael. Appellant testified, however, that he faults Ms. Powlowski for asking about the nature of his relationship with the minor. He testified that Ms. Powlowski should have just determined whether he was J. Michael's mentor. Appellant admitted that the referral from the hospital directed CSB to inquire about the legitimacy of the relationship between him and the minor. *Page 11 
 {¶ 21} The evidence shows that Ms. Powlowski questioned only a small group of individuals relevant to her investigation of the hospital's referral. Specifically, she questioned the alleged victim and his caregivers, his guidance counselor, and appellant. Appellant admitted that CSB was required to investigate the referral regarding the nature of his relationship with J. Michael. The evidence shows that hospital personnel made the referral to CSB when they could not locate either of J. Michael's parents to give consent to his medical treatment and because they were unclear as to appellant's relationship with the minor when appellant admitted that the mentoring program in which he had been involved with the minor had been terminated. In addition, the evidence shows that the Akron Police Department contacted Ms. Powlowski in regard to Lawrence Bell's report, and that it was not Ms. Powlowski who reported a possible molestation by appellant to the police. Further, the evidence shows that Ms. Powlowski informed the police immediately after they contacted her that the referral was unsubstantiated.
 {¶ 22} Under these circumstances, there is no evidence that Ms. Powlowski engaged in any conduct which was unlawful or unjustified, as she had a duty to investigate the referral regarding appellant's relationship with the minor. She limited her contacts during her investigation of the referral and closed the case as unsubstantiated upon the timely conclusion of her investigation. Accordingly, there is no evidence that Ms. Powlowski acted with malice or any intent to harm appellant. Furthermore, there is no evidence that Ms. Powlowski's investigation *Page 12 
involved any purpose other that following up with the hospital's referral which raised concerns about the legitimacy of appellant's relationship with the minor. There is no evidence that her purpose was anything other than the thorough investigation of the concerns of hospital personnel. Accordingly, there is not evidence of bad faith on Ms. Powlowski's part.
 {¶ 23} In addition, appellant failed to present any evidence that Ms. Powlowski failed to exercise any care whatsoever during the course of her investigation. Rather, she limited the scope of her investigation to the questioning of a small relevant group of people and regarding the concerns raised by the hospital personnel regarding appellant's relationship with the minor. Accordingly, there is no evidence of wanton misconduct by Ms. Powlowski. Finally, there is no evidence to show that Ms. Powlowski knew or had reason to know that the manner in which she conducted her investigation would create an unnecessary risk of harm to appellant. In fact, Ms. Powlowski informed the Akron Police Department after they contacted her that the allegations were unsubstantiated. Accordingly, there is no evidence that Ms. Powlowski acted recklessly during the course of her investigation. As the evidence was such that reasonable minds could reach only one conclusion, that being adverse to appellant as the non-moving party, the trial court did not err by granting a directed verdict in favor of Ms. Powlowski on appellant's state law claims on the basis of statutory immunity. Appellant's first assignment of error is overruled. *Page 13 
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN DIRECTING A VERDICT AGAINST THE PLAINTIFF ON HIS FEDERAL CLAIM AGAINST DEFENDANTS POWLOWSKI AND SUMMIT COUNTY CHILDREN SERVICES BOARD."
 {¶ 24} Appellant argues that the trial court erred by directing a verdict against him on his 42 U.S.C. 1983 claim. This Court disagrees.
 {¶ 25} This Court has set out our standard of review regarding directed verdicts above.
 {¶ 26} Appellant alleged in his complaint that he was defamed due to CSB's failure to train Ms. Powlowski, and Ms. Powlowski's actions deprived him of his constitutional rights of due process and privacy. Section 1983, Title 42, U.S. Code, provides:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * *."
"A local government may be found liable under Section 1983, Title 42, U.S. Code when the execution of one of its policies or customs inflicts injury by violating an individual's rights." Thacker v. Franklin Cty.,Ohio (June 21, 1994), 10th Dist. No. 94APE01-10, citing Monell v. Dept.of Soc. Servs. of City of N.Y. (1978), 436 U.S. 658. *Page 14 
 {¶ 27} This Court finds that the trial court did not error by granting directed verdict in favor of appellees on appellant's 1983 claim, because appellant failed to identify any constitutional or federally protected right which appellees may have violated. The Sixth Circuit appellate court has held that "there is no viable, free standing, federal due process claim arising from injury to one's reputation. Such a claim is viable only in combination with two other elements: `when there is some injury to employment * * * in addition to damage to reputation and a subsequent denial of procedural due process to redress that injury.'" Jefferson v. Jefferson Cty. Pub. School Syst. (C.A.6, 2004), 360 F.3d 583, 586, citing In re Selcraig (C.A.5, 1983),705 F.2d 789, 796. The United States Supreme Court has held:
 "But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the `liberty' or `property' recognized in those decisions. Kentucky law does not extend to respondent any legal guarantee of present enjoyment of reputation which has been altered as a result of petitioners' actions. Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any `liberty' or `property' recognized by state or federal law, nor has it worked any change of repondent's status as theretofore recognized under the State's laws. For these reasons we hold that the interest in reputation asserted in this case is neither `liberty' nor `property' guaranteed against state deprivation without due process of law." Paul v. Davis (1976), 424 U.S. 693, 711-12. *Page 15 
 {¶ 28} In this case, there was no evidence that appellant sustained any employment injury. Appellant testified that he did not lose his job, nor was he demoted.
 {¶ 29} The Sixth Circuit has further recognized that the "Supreme Court has concluded that defamation is not a constitutional tort."Walker v. Wilson (C.A.6, 2003), 67 Fed.Appx. 854, 856, citingSiegert v. Gilley (1991), 500 U.S. 226, 233. The Sixth Circuit "has likewise concluded that injury to reputation does not violate a protected liberty interest." Walker, 67 Fed.Appx. at 856, citingDean v. McWherter (C.A.6, 1995), 70 F.3d 43, 45. Further, "[e]ven an allegation of diminished employment opportunities resulting from harm to reputation is insufficient to state a due process claim."Walker, 67 Fed.Appx. at 857, citing Vander Zee v. Reno (C.A.5, 1996),73 F.3d 1365, 1368-70.
 {¶ 30} In this case, there is no evidence that appellant may no longer associate with J. Michael, or any other youth. There is no evidence that appellant may not participate in other mentoring programs. While appellant asserted that he would be limited in his ability to participate in mentoring programs, he presented no evidence that he has even attempted to do so.
 {¶ 31} In addition, this Court is not persuaded by appellant's presentation of supplemental authority and his reliance on the recent Ohio Supreme Court case of Welling v. Weinfeld, 113 Ohio St.3d 464,2007-Ohio-2451. While that case holds that Ohio recognizes the "false light" theory of the tort of invasion of privacy, Id. *Page 16 
at ¶ 1, the case does not address that issue within the context of42 U.S.C. 1983 actions.
 {¶ 32} For the reasons enunciated above, this Court finds that the evidence was such that reasonable minds could reach only one conclusion, that being adverse to appellant as the non-moving party, so that the trial court did not err by granting a directed verdict against appellant on his federal Section 1983 claim against appellees. Appellant's second assignment of error is overruled.
 III. {¶ 33} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 17 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
DONNA J. CARR FOR THE COURT
SLABY, P. J. WHITMORE, J. CONCUR
[1] Appellant does not challenge the directed verdict against him on his state law claims against CSB. *Page 1