**STOLL, Appellant,**

v.

**GARDNER et al., Appellees.**

[Cite as *Stoll v. Gardner*, 182 Ohio App.3d 214, 2009-Ohio-1865.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 24336.

Decided April 22, 2009.

Edmund M. Sawan, for appellant.

Donald W. Davis and Kenneth R. Calderone;  and Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Susan Baker–Ross, Assistant Prosecuting Attorney, for appellees.

WHITMORE, Judge.

{¶ 1} Plaintiff-appellant, Barbara Stoll, appeals the decision of the Summit County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Judy Gardner, David Stone, and Drew Alexander. Having found that there remains no genuine issue of material fact, this court affirms.

I

{¶ 2} This case involves the civil complaint that followed criminal charges that were alleged against Stoll in December 2004. The charges were based on a call made by Gardner to the welfare-fraud hotline in August 2004. Gardner reported that Stoll, an executive at the Summit County Department of Job and Family Services ("SCDJFS"), was helping her ex-husband, William Summerville, fraudulently obtain government benefits. Initially, Gardner alleged that Summerville was obtaining welfare benefits with Stoll's assistance in exchange for providing Stoll with prescription drugs. Stone was the detective assigned to SCDJFS to investigate any reports of fraud that came in through the hotline. Upon receiving the information from the hotline, he began to investigate Gardner's claims.

{¶ 3} When Stone began his investigation and contacted Gardner, she provided him with detailed information as to Stoll and Summerville, including their phone numbers, addresses, and Social Security numbers. Gardner also informed Stone that she and Summerville were involved in a relationship that had recently ended, and that he was no longer living with her.

{¶ 4} Upon verifying the demographic and background information provided by Gardner, Stone contacted her for a more detailed discussion of the allegations. Based on the information Stone learned from Gardner, he contacted his supervisor and SCDJFS's legal counsel because he considered the information sensitive and confidential, given Stoll's managerial position with SCDJFS.

{¶ 5} On September 13, 2004, Gardner called the welfare-fraud hotline again, alleging that Stoll had signed documents approving Medicaid benefits for Summerville without his having paid the requisite portion of his medical expenses first.[1] Additionally, Gardner asserted that Summerville was concealing assets in order to qualify for Medicaid benefits. At this point, SCDJFS's legal counsel had

---

1. Medicaid permits applicants to submit proof that on a monthly basis, they have paid medical expenses in an amount sufficient to then qualify for Medicaid for that month. This monthly showing is termed the "spend-down" requirement and allows applicants to obtain a "temporary medical authorization" to obtain services.

also informed Stone that they were interested in further investigating Stoll's conduct.

{¶ 6} Upon additional investigation, Stone learned that Stoll had authorized Medicaid benefits for Summerville, despite not having any authority over and not working in that division at SCDJFS; Stoll had signed Summerville's temporary-medical-authorization forms for several months in 2004 and had kept these forms in her personal files, instead of in Summerville's SCDJFS file; and that Summerville had concealed the existence of a $10,000 settlement, a sports car, and a motorcycle when he applied for governmental benefits. Moreover, Stone learned that Summerville's Social Security income had been terminated based on a finding of excessive income. Stone did not find any evidence of the drug allegations Gardner asserted, though he did learn that Stoll had a history of substance abuse.

{¶ 7} Stone met with the Summit County Prosecutor, and based on that discussion, Stoll was charged with tampering with records, Medicaid fraud, and theft in December 2004. The grand jury declined, however, to indict Stoll on the charges.

{¶ 8} When investigating the fraud allegations, Stone also learned that Stoll (formerly known as Barbara Gooch) had been convicted in 2000 in Portage County for driving under the influence ("DUI"). Stone requested records related to Stoll's DUI conviction during the course of his investigation but did not receive them until sometime in early 2005. When requesting the DUI records, Stone was told by the person he contacted in Portage County that the file contained a suspicious letter purportedly from SCDJFS. When he finally received the DUI file, Stone found the letter, allegedly signed by Stoll's supervisor, Carol Davis, requesting authorization for Stoll to have work-driving privileges after her DUI conviction. That letter was not on SCDJFS letterhead. Stone discussed the letter with Davis at the direction of the Summit County Prosecutor. He then returned the DUI file and reported the results of his discussion with Davis to the Portage County officials. Portage County later indicted Stoll on a charge of forgery; however, that charge was ultimately dismissed.

{¶ 9} In February 2005, SCDJFS fired Stoll.[2] On November 18, 2005, Stoll filed the underlying complaint alleging defamation; malicious prosecution, false arrest and false imprisonment; intentional and negligent infliction of emotional distress; and negligent training and supervision. Appellees timely filed motions

---

2. Stoll appealed her termination to the Human Resources Commission ("HRC"), which reversed the termination and granted her a one-year suspension. This decision was later reversed by this court upon SCDJFS's appeal and remanded to the HRC for further proceedings. See *Summit Cty. v. Stoll*, 9th Dist. No. 23465, 2007-Ohio-2887, 2007 WL 1695118.

for summary judgment, which the trial court granted in their favor on June 25, 2008. Stoll has timely appealed from that judgment, asserting a single assignment of error.

## II

### Assignment of Error

The trial court erred in granting summary judgment in favor of the various defendants where genuine issues of material fact exist.

{¶ 10} In her sole assignment of error, Stoll asserts that the trial court erred when it granted appellees' motions for summary judgment because there are genuine issues of material fact as to whether appellees were precluded from asserting an immunity defense. Specifically, she argues that their conduct falls into one of the exceptions to immunity because they acted with a malicious purpose in seeking an indictment against her based on Gardner's accusations and in pursuing the forgery charge asserted against her in Portage County. We disagree.

{¶ 11} An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. It applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378. Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in the favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the nonmoving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293, 662 N.E.2d 264. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some

evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 12} As the moving parties, appellees bear the burden of proving that there was no genuine issue of material fact that requires litigation. Stone and Alexander argue that the doctrine of sovereign immunity precludes them from being found liable for any acts performed while acting within the scope of their employment for a political subdivision. Likewise, Gardner argues that she has qualified immunity, as she was assisting law enforcement in the detection of a crime. We address the issues of governmental and qualified immunity separately.

**Stone and Alexander—Governmental Immunity**

{¶ 13} R.C. 2744 et seq. provides governmental immunity to political subdivisions and their employees. Specifically, R.C. 2744.02(A)(1) provides, "[A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision *or an employee of the political subdivision in connection with a governmental or proprietary function.*" (Emphasis added.) An "employee" is defined by R.C. 2744.01(B) as "an officer, agent, employee, or servant * * * who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision." Among the list of identified governmental functions is "[t]he provision * * * of police * * * services or protection" and the "enforcement * * * of any law." R.C. 2744.01(C)(2)(a), (i).

{¶ 14} R.C. 2744.03(A)(6) provides absolute immunity to employees, whether Stoll's claims are based in negligence or intentional tort, such as defamation. *Blankenship v. Enright* (1990), 67 Ohio App.3d 303, 309–310, 586 N.E.2d 1176 (noting that "[e]mployees of a political subdivision are now totally immune pursuant to R.C. 2744.03(A)(6)"); see also *Starkey v. Hartzler* (Mar. 26, 1997), 9th Dist. No. 96CA0048, 1997 WL 197202, at *3 (applying immunity protection to a political subdivision's employee for his negligent act); and *Thornton v. Summit Cty. Children Servs. Bd.*, 9th Dist. No. 23490, 2007-Ohio-4657, 2007 WL 2609539, at ¶ 7–23 (applying immunity protection to a political subdivision's employee for defamation and intentional infliction of emotional distress). An employee's immunity remains intact as a defense to any civil claims unless a plaintiff can prove under R.C. 2744.03(A)(6) the following:

(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) [t]he employee's acts or omissions were [committed] with malicious purpose, in bad faith, or in a wanton or reckless manner; [or]

(c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code.

{¶ 15} This court has previously construed the terms found in R.C. 2744.03(A)(6)(b) as follows:

"Malice" is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. * * * "Bad faith" involves a dishonest purpose, conscious wrong-doing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. * * * [W]anton misconduct is the failure to exercise any care whatsoever. * * * [M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor. Such perversity must be under such conditions that the actor must be conscious that his conduct will, in all likelihood, result in an injury.

(Citations omitted.) *Thornton* at ¶ 11.

{¶ 16} The Ohio Supreme Court recently reiterated its belief that "showing recklessness is subject to a high standard" when a plaintiff is attempting to abolish employee immunity under R.C. 2744.03(A)(6)(b). *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, at ¶ 37. This court has previously held that "the exceptions to immunity set forth in R.C. 2744.03 must be narrowly construed." *Sturgis v. E. Union Twp.*, 9th Dist. No. 05CA0077, 2006-Ohio-4309, 2006 WL 2389589, at ¶ 18.

{¶ 17} Stoll has not directed this court to any statutory provisions imposing liability upon Stone and Alexander, nor has our review revealed that any exist. Thus, our determination as to whether Stone and Alexander may have been exempt from immunity is subject to the provisions of R.C. 2744.03(A)(6)(a) and (b) only.

{¶ 18} Stone argues that he was acting within the scope of his employment when he worked with the prosecutor to indict Stoll on charges of tampering with records, Medicaid fraud, and theft. It is undisputed that Stone received Gardner's tip while working in the fraud-prevention unit and worked with other law enforcement officials in determining whether or not to file a complaint based on the tip. Stone's unrefuted deposition testimony revealed that he referred the matter to SCDJFS's legal counsel, who later directed him to investigate further upon his receipt of the second call from Gardner. Additionally, Stone interviewed Summerville, Gardner, and Stoll in an effort to gauge the credibility of the parties, given their interrelated personal relationships. Stone verified the personal and demographic information proffered by Gardner when she called the hotline, all of which was correct.

{¶ 19} Stone also obtained a copy of the SCDJFS's conflict-of-interest policy, which confirmed that employees were prohibited from authorizing benefits for friends or relatives. Stone researched and verified Gardner's allegations, then met with the prosecutor to determine whether there was sufficient evidence upon which to indict Gardner. The prosecutor agreed that there was and recommended doing so based on the findings from Stone's investigation.

{¶ 20} Stone testified that he was still investigating Summerville's involvement in this matter when he received Stoll's Portage County DUI file in 2005. He testified that he had been asked by the prosecutor to follow up on the suspicious letter, so he and another detective met with Davis to discuss it. Stone testified that his discussions with Davis revealed that Davis had not seen or known of the letter. Stone testified that he "couldn't do anything with [the information, so he] forwarded it to Portage County."

{¶ 21} Based on this testimony and the applicable statutory provisions, we conclude that Stone was acting as an employee of a political subdivision and was performing a governmental function. Thus, he was immune from liability unless Stoll could show that he acted maliciously, in bad faith, or in a wanton or reckless manner. R.C. 2744.03(A)(6).

{¶ 22} Stoll's complaint specifically directed the claim of negligent training and supervision toward Alexander. Stoll does not proffer an argument on appeal, however, as to the negligent-training-and-supervision claim. Accordingly, we need not address it. See App.R. 16(A)(7); Loc.R. (7)(B). To the extent that Alexander was included in the other claims alleged in Stoll's complaint through her use of the collective term "defendants," he argues that he, too, is protected by governmental immunity, as any contact he had with Stoll would have been in his capacity of Summit County Sheriff. Accordingly, we conclude that he would have been acting as an employee of a political subdivision performing a governmental function and that he, too, was entitled to governmental immunity unless Stoll could prove an exemption under R.C. 2744.03(A)(6)(b).

{¶ 23} For the aforementioned reasons, we conclude that Stone and Alexander have met their *Dresher* burden in asserting their immunity to the claims asserted by Stoll. We look now to whether Stoll proffered evidence that raised a material dispute of fact as to Stone's or Alexander's entitlement to the defense of statutory immunity.

{¶ 24} Before addressing Stoll's arguments, we note that other than the separately filed deposition testimony of the parties, the only item attached to Stoll's summary judgment motion that constitutes Civ.R. 56(C) evidence is Davis's affidavit. All the other documents attached to Stoll's motion, including transcript excerpts from her HRC case, have not been incorporated by reference

through a properly framed affidavit pursuant to Civ.R. 56(C). See *Wayne Sav. Community Bank v. Gardner*, 9th Dist. No. 08CA0016, 2008-Ohio-5926, 2008 WL 4901700, at ¶ 17. A trial court has the discretion to either consider or ignore improper Civ.R. 56 evidence when the opposing party fails to object to it. Id., citing *Richardson v. Auto–Owners Mut. Ins. Co.*, 9th Dist. No. 21697, 2004-Ohio-1878, 2004 WL 785461, at ¶ 29. We will not presume that the trial court considered such improper evidence, however, unless the trial court specifically indicated that it did so when entering judgment in the case. Id. To do otherwise would presume irregularity by the trial court. *Wayne Sav. Community Bank v. Gardner* at ¶ 17, citing *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 222–223, 515 N.E.2d 632. Thus, we must determine whether the deposition testimony and affidavit will enable Stoll to satisfy her *Dresher* burden.

{¶ 25} Stoll generally argues in support of each of her claims that there is evidence that Stone acted in a malicious manner and without a legitimate purpose because the charges against her in Summit and Portage County were both "terminated in her favor" and were found to have "no probable cause." Stoll maintains that Stone was acting maliciously when he investigated issues associated with her prior conviction in Portage County, which was outside of his jurisdiction. Stoll argues that Stone's malicious conduct is evidenced by his failure to question certain SCDJFS employees such as Summerville's caseworker, the caseworker's supervisor, or the technical assistant for Summerville's case. Stoll contends that Stone should have asked them about her conduct before he filed a criminal complaint against her. Stoll further argues that Stone should not have considered Gardner's information credible, given that Gardner had a history of alcohol and substance abuse and had recently ended a personal relationship with Summerville.

{¶ 26} The only Civ.R. 56(C) evidence that Stoll presents in support of her claim that Stone's actions were motivated by malice is Summerville's deposition testimony and Davis's affidavit. In his deposition, Summerville alleges that when he met with Stone after Stoll's arrest, Stone called her an "arrogant piece[ ] of s* *t" and told Summerville, "I'd like to take her down a few notches."[3] Stoll also relies on Davis's affidavit as evidence that Stone's conduct was motivated by malice. In that affidavit, Davis averred that she had met with Stone, who advised her "that Ms. Stoll *may* have committed a forgery" (emphasis added) by signing Davis's name to letter requesting driving privileges in Stoll's Portage County DUI case. Davis further averred that after submitting over a dozen

---

**3.** For the purpose of our summary judgment review, we must assume the truth of the statements made by Summerville and other witnesses and construe all facts in Stoll's favor.

signatures to the detective who was with Stone, the detective "thought that [her] signatures matched the one submitted" on the letter in Stoll's Portage County DUI case. However, Davis's affidavit admitted that she did not "have any independent recollection of having signed [the letter requesting Stoll's driving privileges]," nor did she "have an independent recollection that [she] did not sign same."

{¶ 27} Davis also averred that when she asked Stone whether she should meet with Stoll and her attorney to discuss the forgery charges that were later brought against Stoll in Portage County, Stone advised her not to do so. Davis believed that Stoll was "not being treated fairly" by Stone after the Summit County Grand Jury declined to indict her in 2004.

{¶ 28} Despite these claims, the record reveals that Stone verified the information he received from Gardner and found corroborating evidence to support Gardner's claims. Stone testified that he had treated the information as sensitive because of Stoll's position at SCDJFS and that he had informed his supervisor and SCDJFS's legal counsel of the allegations before he pursued any investigation. Stone interviewed Gardner multiple times to gain information about the allegations she reported to the hotline before acting on Gardner's allegations. Stone testified that Gardner admitted to him in the course of those discussions that she had had substance-abuse problems in the past. However, he found most of her allegations verifiable upon additional investigation. Stone admitted that he had been unable to find any evidence substantiating Gardner's claim that Stoll and Summerville were engaged in any illegal prescription-drug exchange. Consequently, he did not pursue that matter, and there were no charges brought against Stoll in that regard.

{¶ 29} The record reflects that Stone conducted a thorough and independent investigation of the information he received from Gardner. His investigation included interviewing Summerville; determining that Summerville had concealed assets when he applied for governmental benefits; conducting background checks on the involved parties; gathering organizational information from SCDJFS; interviewing the SCDJFS personnel manager and the Medicaid supervisor, in addition to "higher department heads" to determine SCDJFS's protocols related to this matter; working with SCDJFS internal investigations staff; and determining that Stoll had authorized benefits for Summerville and had kept those records to herself. Additionally, SCDJFS's counsel directed Stone to pursue the matter further, and Stone met with the prosecutor who recommended felony charges against Stoll based on her conduct.

{¶ 30} Other than the alleged inappropriate comments to Summerville and the statements set forth in Davis's affidavit, Stoll cites no evidence in the record to support a conclusion that Stone had intended to harm her or had pursued the

matter based on any ulterior motive. Compare *Aronson v. Akron* (Apr. 4, 2001), 9th Dist. No. 19816, 2001 WL 326875, at *6 (reversing the grant of summary judgment because there was evidence that police "exaggerated, misconstrued, or revised witness statements regarding appellants * * * failed to include exculpatory evidence in their reports * * * [and] manipulated the official investigation").

{¶ 31} We agree that the comments Stone is alleged to have made to Summerville about Stoll are inappropriate and unprofessional. However, even when viewed in the light most favorable to Stoll, we find such comments do not constitute a showing of malice sufficient to deprive Stone of statutory immunity. See *Selvy v. Morrison* (2008), 292 Ga.App. 702, 706, 665 S.E.2d 401 (concluding that an officer's derogatory remarks and use of profanity were insufficient to exempt the officer from immunity and noting that "proof of ill will, unless * * * combined with the intent to do something wrongful or illegal," does not substantiate a finding of malice); see also *Tittle v. Corso* (2002), 256 Ga.App. 859, 863, 569 S.E.2d 873 (concluding that an officer's use of profanity, threats, and physical force did not demonstrate a deliberate intent to commit a wrongful act as required to prove malice and abolish immunity).

{¶ 32} Stoll has failed to proffer any facts to support a conclusion that Stone acted without due care in performing his investigatory duties or with a dishonest purpose in filing a complaint against her. Stone's investigation was sanctioned by SCDJFS, was comprehensive in scope, and resulted in findings that were deemed sufficient by the prosecutor to proceed with criminal charges against Stoll. Distasteful as the alleged comments were, they do not constitute malice.

{¶ 33} Stoll also contends that the forgery charges later brought against her in Portage County demonstrate Stone's malicious motive. We disagree. Stone received the Portage County DUI file in the proper scope of his investigation of Stoll, after being alerted by Portage County authorities that there was a suspicious document in the file. That document was on its face irregular, given that it was not on SCDJFS letterhead. The record demonstrates that Stone properly investigated the irregularity and reported his finding to Portage County authorities when he returned the file. Stoll offers no evidence that Stone urged Portage County to prosecute her on what he knew to be a bogus forgery charge or that he in any way participated in the decision to indict Stoll in Portage County. Davis's subjective suspicions do not create a question of material fact regarding malice.

{¶ 34} Furthermore, the fact that another detective "thought [Davis's] signatures matched" the signature on the letter in Stoll's DUI file, likewise fails to demonstrate malice, dishonest motive, or conscious wrongdoing on the part of Stone. There is nothing in the record to suggest that the detective opining on a possible signature match had any special experience or training as a forensic

expert in handwriting analysis. Thus, his casual comparison of signatures carried no special credibility. Moreover, it would be rare if a criminal investigation did not result in inconsistent or equivocal evidence. Under Stoll's analysis of the investigative process, legitimate investigations would be substantially impaired and conscientious public servants subjected to unwarranted scrutiny. Accordingly, the degree of malice necessary in order to set aside sovereign immunity is necessarily high and the exception to immunity narrowly construed.

{¶ 35} We therefore conclude, based on the Civ.R. 56(C) evidence in the record, that the facts offered by Stoll, when taken as true, are insufficient to create a material dispute of fact on the issue of malice. Thus, Stoll has failed to identify any genuine factual dispute sufficient to overcome Stone's statutory immunity.

{¶ 36} Finally, we note that the record is void of any evidence that Alexander was even involved in the investigation and prosecution of Stoll, nor has Stoll proffered any argument that Alexander acted with malice, bad faith, or in a reckless manner. Thus, the trial court did not err when granting summary judgment in favor of Stone and Alexander because Stoll has failed to meet her reciprocal *Dresher* burden in identifying any material fact in dispute.

**Gardner—Qualified Immunity**

{¶ 37} Private citizens are afforded qualified immunity when they provide governmental authorities with information to assist in the prevention or detection of a crime. *Leitner v. Vinson* (June 13, 1979), 9th Dist. No. 2832, 1979 WL 207673, at *3 (concluding that a defendant who reported information to the investigating police officer "would be at least qualifiedly privileged, under the 'public interest' privilege which protects citizens who exercise their public duty and give information to police for the prevention or detection of crime"); see also *A & B–Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 9, 651 N.E.2d 1283, quoting Prosser & Keeton, The Law of Torts (5th Ed.1984) 830, Section 115 (discussing that qualified immunity and noting that the "public interest privilege involves communications made to those who may be expected to take official action of some kind for the protection of some interest of the public"). "[I]n Ohio a qualified privilege can be defeated only by a clear and convincing showing that the communication was made with actual malice." Id. at 11, 651 N.E.2d 1283. " '[A]ctual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." Id. at 11–12, 651 N.E.2d 1283, quoting *Jacobs v. Frank* (1991) 60 Ohio St.3d 111, 573 N.E.2d 609, paragraph two of the syllabus.

{¶ 38} Gardner's deposition testimony revealed that her previous work experience for various health-care suppliers and providers had left her well informed on

how a person qualified for Medicare, Medicaid, and welfare benefits. Based on that knowledge and the information she was aware of given her personal relationship with Summerville, she concluded that he was concealing assets such as a sports car, a motorcycle, and a $10,000 settlement in order to qualify for Medicaid benefits. Gardner had photographs of Summerville sitting on the motorcycle he purchased in April 2004.

{¶ 39} Additionally, Gardner testified that Summerville told her that Stoll was helping him obtain his "temporary medical authorizations" by signing off on his monthly "spend-down," though he was not paying the requisite amount of his medical bills each month. In light of Gardner's understanding of the Medicaid-eligibility requirements, coupled with her knowledge of Summerville's personal financial situation and Stoll's internal assistance at SCDJFS, we determine that Gardner was entitled to qualified immunity for reporting Stoll's conduct to the fraud hotline unless Stoll can prove that Gardner acted with actual malice.

{¶ 40} Stoll maintains that Gardner's call to the fraud hotline and the allegations reported by Gardner were motivated by malice because they had no "basis in fact," and they were made only because Gardner was a "jilted lover." Additionally, Stone points to Gardner's admission of substance abuse and to Summerville's conflicting testimony as to what Stoll's involvement was in his Medicaid case.

{¶ 41} However, based on the evidence in the record, we cannot conclude that there is any material dispute of fact to support Stoll's assertion that the information Gardner gave Stone was provided with actual knowledge of its falsity or in reckless disregard for its truth. Gardner provided material and credible information regarding Stoll's conduct—conduct that facilitated Summerville's receipt of Medicaid benefits in contravention of the prescribed process. Gardner's call did assist law enforcement in the investigation of a potential crime by Summerville and Stoll. The fact that charges were not filed, or if filed not proven, is immaterial and does not generate a material dispute of fact sufficient to defeat Gardner's qualified privilege. Accordingly, the trial court properly granted summary judgment in favor of Gardner.

## III

{¶ 42} Stoll's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

DICKINSON, J., concurs.

MOORE, P.J., concurs in judgment only.