**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0211n.06

**No. 18-3737**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 25, 2019
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| JEFFREY M. HUNT, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| MONRO MUFFLER BRAKE, INC., | ) COURT FOR THE NORTHERN |
| | ) DISTRICT OF OHIO |
| Defendant-Appellee. | ) |
| | ) |

BEFORE: DAUGHTREY, COOK, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Jeffrey Hunt appeals from an order granting summary judgment in favor of his former employer, defendant Monro Muffler Brake, on multiple employment-related claims. We affirm.

I.

A.

Monro employed Hunt as an automotive technician at its Medina, Ohio, location from August 2016 to November 2017. In that role, Hunt was responsible for diagnosing and repairing vehicles, which required him to, among other things, "operate lifts, welders, [and] brake lathes correctly," lift up to fifty pounds, and "work with [his] hands overhead." Monro primarily compensated Hunt on a commission basis but guaranteed a minimum hourly wage if his sales

incentives fell below a certain threshold. It also paid Hunt overtime. Three aspects of his employment are relevant to this litigation.

*Compensation dispute.* Monro requires its employees to accurately record time worked in its "Point of Sale" (POS) system. Employees may not punch in before their scheduled shift or remain punched in after their shift's completion without management's authorization. From late 2016 to early 2017, the Medina store's management altered several of Hunt's time records after concluding Hunt's time entries were inflated—he would, for example, punch in early or not punch out for lunches or at the end of his shift. Hunt took issue with this, calling Monro's "Direct Access Whistleblower Hotline" on January 4, 2017, to complain about "being shorted hours" and not being paid overtime. He also lodged a similar complaint with a manager. And he sometimes logged back in to the POS system and re-altered the time entries. Monro commenced an investigation, but ultimately could not "confirm whether Hunt was ever present in the [Medina] Store during the time that he alleged that he was working."

*Hunt's injury.* On April 3, 2017, an air compressor pinned Hunt's hand against a car door, lacerating his left palm. He received workers' compensation benefits, and was cleared to work with "light-duty" restrictions—including not lifting more than ten pounds—from May 1, 2017 to October 27, 2017. Hunt told Monro he could not lift, but "could perform other tasks, like oil changes, answering the phone, ringing customers out, getting them oil and filters, stuff that did not involve using [his] hand strenuously." Monro did not return Hunt to work, however; the company "does not maintain light duty positions at the Medina Service Store."

*Termination.* While Hunt was on medical leave, Monro audited its stores' purchases of specialty items from third-party vendors. It regularly conducts these audits "to ensure that its own products are being used and sold appropriately." The audit uncovered Hunt's purchase of four

specialty tires on December 1, 2016, which was unusual for several reasons. First, Hunt made the purchase using a general purchase order form, which is typically used for low cost items. Additionally, he didn't connect the purchase to a customer invoice number, Monro's records did not reflect that the tires were put on a customer vehicle, and they were not present at the Medina store.

Monro confronted Hunt, who claimed he installed the tires on either a Dodge Charger or Chrysler 300. However, Monro could not substantiate this claim, in part because it could not determine that either of these models were serviced by the Medina store during the pertinent period. Monro then conducted a broader audit and discovered two other suspicious tire purchase, one made by another Medina employee and one by a different employee in the same region. Neither of these employees remain employed with Munro. One was separated before the audit for sleeping on the job, and the other resigned during the investigation. Monro also filed police reports regarding all of these missing tires.

On November 15, 2017, Monro terminated Hunt's employment. The termination letter noted that Monro provided Hunt "with an opportunity to address the missing . . . tires," and that Hunt was "unable to provide [Monro] with a credible explanation regarding the location of the . . . tires." It then concluded: "All employees in your region, who purchase and receive equipment, merchandise, or products that cannot be accounted for, are immediately separated from their employment. In conformance with this standard practice, your employment with Monro is terminated, effective immediately."

B.

While on leave, Hunt filed this lawsuit in Ohio state court. Following removal and several amendments, his operative complaint pleaded several causes of action against Monro: breach of contract; failure to pay overtime wages in violation of Ohio law and the Fair Labor Standards Act; unjust enrichment; promissory estoppel; disability discrimination under Ohio law and the Americans with Disabilities Act; workers' compensation retaliation under Ohio law; defamation; and retaliation under the Fair Labor Standards Act. The district court granted summary judgment in Monro's favor on all counts. Except for his Fair Labor Standards Act retaliation and Ohio wage and hour claims,[1] Hunt appeals from that order.

II.

We review the district court's grant of summary judgment de novo. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013). Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Although we view the evidence in the light most favorable to the nonmovant, *Rogers*, 737 F.3d at 1030, "the plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "We may affirm on any grounds

---

[1]As part of its motion for summary judgment, Monro sought summary judgment on Hunt's FLSA retaliation claim. The district court granted Hunt's motion in its entirety but failed to discuss the FLSA retaliation claim. Nonetheless, Hunt has forfeited our review of the FLSA retaliation claim because he did not make it part of his appeal here. *See, e.g.*, *United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006). The same goes for his Ohio wage-and-hour claim, which he also does not address in his appeal. *Id.*

supported by the record even if different from the reasons of the district court." *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007) (internal quotation marks omitted).

### III.

Under the ADA, an employer may not "discriminate against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Discriminate," for the purpose of Hunt's claims, includes his contention that Monro (1) "discharge[d]" him "on the basis of [his] disability," *id.*, and (2) failed to reasonably accommodate his disability. § 12112(b)(5)(A). Ohio law proscribes similar conduct. *See, e.g.*, Ohio. Rev. Code Ann. § 4112.02. We may analyze these statutes collectively. *See Hostettler v. College of Wooster*, 895 F.3d 844, 848 n.1 (6th Cir. 2018).

### A.

We begin with Hunt's claim that Monro terminated his employment because of his "disabled" hand, to which we apply the familiar *McDonnel Douglas* burden-shifting framework. *See Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014). A plaintiff must first make a prima facie showing—that (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of his position, with or without accommodation; and (3) he suffered an adverse employment action because of his disability. *Id.* The alleged discrimination must have been a "but-for" cause of the adverse employment action. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc). Once a plaintiff presents a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 813 (6th Cir. 1999). If it does so, the burden shifts back to the plaintiff to show that the proffered reason is pretext for unlawful discrimination. *Id.*

The district court stopped at the prima facie stage, concluding the temporary nature of Hunt's hand injury meant that he was not disabled. Noting that the 2008 amendments to the ADA broadened the definition of disability, *see* 42 U.S.C. § 12102(4), Hunt argues this was in error because "an impairment lasting or expected to last fewer than six months *can* be substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ix) (emphasis added). We have yet to comprehensively discuss the scope of temporary impairments under the broadened definition. Although we are skeptical that Hunt's hand injury rises to the level of a disability under the Act, we see no reason to address that issue because he cannot demonstrate pretext. Monro proffered a legitimate, nondiscriminatory reason for terminating Hunt's employment—his inability to account for the missing tires. It is thus Hunt's burden to show pretext by demonstrating this reason had no basis in fact, did not motivate Monro's action, or was insufficient to motivate Monro's action. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 895 (6th Cir. 2016). He offers a litany of arguments, none of which are persuasive.

Hunt first contends that he engaged in protected activity—complaining to the Department of Labor about Monro's pay practices and commencing this litigation before his termination—as evidence of pretext. But whether Hunt engaged in protected activity is wholly unrelated to whether Monro's proffered justification for his termination was merely an attempt to cover up disability discrimination.[2]

Next, Hunt asks that we view the missing-tires reason skeptically because Monro also offered evidence during discovery that Hunt violated its timekeeping practices. After all, the argument goes, "[a]n employer's changing rationale for making an adverse employment decision

---

[2]Hunt raises additional pretext arguments about how he was treated "differently" and was "shunned" after complaining about his wages. These contentions, however, neither undermine Monro's missing-tire determination nor relate to his claim of disability discrimination.

can be evidence of pretext." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996). We are unconvinced. Regardless of Hunt's alleged inability to clock-in/clock-out appropriately under Monro's policies, there is no record evidence indicating Monro proffered this reason as support for his termination. Simply put, the record does not reflect that Monro's explanation for Hunt's termination has ever shifted.

He also points to the timing of his termination, claiming that Monro did not fire him "until nearly a year after the alleged conduct occurred [and] shortly after [he] requested to return to work during the mediation of this case." This argument is flawed in at least two respects. First, Monro did not discover the missing-tire issue until during Hunt's medical leave. Second, and more crucially, "the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext." *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012).

Finally, Hunt summarily faults Monro for not conducting a more "serious investigation" into the missing tires. It is not within our province to act as a "super personnel department[] to second guess an employer's facially legitimate business decisions." *Lee v. City of Columbus*, 636 F.3d 245, 257–58 (6th Cir. 2011). Having reviewed the record, we decline to exercise our extremely limited veto power over Monro's business judgment, especially given Hunt's inability to factually contest Monro's conclusion that Hunt could not provide a "credible explanation regarding the location of the . . . tires."

B.

To establish a prima facie case of failure to accommodate, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary

accommodation. *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018). As part of this prima facie case, a plaintiff "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 870 (6th Cir. 2007) (citation omitted). Hunt claims Monro denied him a reasonable accommodation when it refused his request for "light duty" work following his hand injury. As mentioned, the district court found Hunt was not disabled, but also noted that Monro was not required to create such a "light duty" position for Hunt.

We need not resolve the correctness of this reasoning, because Hunt's claim fails for the simple reason that a "suggested accommodation is not reasonable if it requires eliminating an essential function of the job." *Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014) (internal quotation marks omitted). Here, Hunt's position required him, as conceded by Hunt, to have the "lifting ability up to 50 lbs" and "ability to work with hands overhead." Although he contends he could do other tasks—answer the phone, operate the cash register, etc.—Hunt's light-duty accommodation request would have eliminated one of the essential functions of his job. His proposed accommodation was therefore unreasonable. *See EEOC v. Ford Motor Co.*, 782 F.3d 753, 763 (6th Cir. 2015) (en banc).

## IV.

Ohio law provides that "[n]o employer shall discharge . . . any employee because the employee filed a claim" for workers' compensation benefits. Ohio Rev. Code Ann. § 4123.90. To establish a prima facie case of retaliation under § 4123.90, a plaintiff must—among other elements—establish a causal connection between the protected activity and the discharge. *Barber v. Chestnut Lund Co.*, 63 N.E.3d 609, 620 (Ohio Ct. App. 2016). The district court reasoned Hunt failed to make such a showing, noting a significant lapse in time between his April injury and his

November termination. We agree. The many months between these events, without other indicia to create an inference of a causal connection, are insufficient under Ohio law to establish a causal connection. *See, e.g.*, *Harris v. OHNH EMP, LLC*, 37 N.E.3d 1256, 1262–63 (Ohio Ct. App. 2015) ("A little over two months passed between the filing of Mr. Harris' workers' compensation claim and his termination. Such temporal proximity is not sufficiently close in and of itself to establish causation.").[3] And even if Hunt could make such a showing, he cannot demonstrate pretext, as discussed above.

## V.

Hunt next takes issue with Monro altering his timesheets, contending this practice shorted him several overtime hours in violation of the Fair Labor Standards Act. It is an employee's burden to "prove, by a preponderance of the evidence, that he performed work for which he was not properly compensated." *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015) (internal quotation marks and citation omitted). When an employer's records are "inaccurate or inadequate," as Hunt claims here, he may carry his burden by "produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Yet, other than generally objecting to Monro downwardly adjusting his timesheets, Hunt provided the district court with no such sufficient evidence, and the district court accordingly dismissed his overtime claims. We see no reason to

---

[3]Contrary to Hunt's assertion, *Harrison v. Metro. Gov't of Nashville and Davidson Cty.*, 80 F.3d 1107 (6th Cir. 1996), does not provide that any protected activity within a year and three months of an adverse employment action creates a causal connection in and of itself. There, unlike here, the plaintiff produced other evidence of a causal connection between the protected activity and the employer's retaliatory act. *Id.* at 1119.

disturb this holding, especially given Hunt's arguments on appeal—which include new arguments, new, unsupported facts, and a general distortion of the record testimony.

Moreover, because Hunt wholly fails to establish he worked additional hours to which he was entitled compensation, his ancillary claims also predicated upon allegedly working without appropriate compensation—breach of contract, unjust enrichment, and promissory estoppel—must similarly fail.

VI.

In order to establish defamation under Ohio law, a plaintiff must show "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832, 852 (Ohio 2012). Ohio law grants at least a qualified privilege for statements to governmental authorities regarding preventing or detecting a crime. *Stoll v. Gardner*, 912 N.E.2d 165, 174 (Ohio Ct. App. 2009). A plaintiff may overcome this privilege with a clear and convincing showing that the statements were made with actual malice, that is "acting with knowledge that the statements are false or acting with reckless disregard to their truth or falsity." *Id*. (citation omitted). "Under Ohio law, 'it is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not.'" *Boulger v. Woods*, 917 F.3d 471, 478 (6th Cir. 2019) (citation omitted).

The district court concluded plaintiff could not show that Monro's filing of the police report regarding the missing tires was false. On appeal, Hunt does not substantively contest this finding, and instead devotes his attention to whether Monro made its report in good faith for purposes of its qualified privilege defense. Having failed to develop a cogent argument on the falsity finding,

Hunt has forfeited our consideration of this issue.  *See, e.g.*, *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624–25 (6th Cir. 2013).  Forfeiture notwithstanding, we agree with Monro that Hunt fell well short of establishing actual malice for purposes of overcoming Monro's qualified privilege.

## VII.

For these reasons, we affirm the judgment of the district court.